UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,                            CRIM. NO. 08-20277

      v.                                   HON. TERRENCE G. BERG

PHILLIP EUGENE WALKER,

      Defendant.
_____/

**OPINION AND ORDER DENYING DEFENDANT'S
MOTION TO DISMISS INDICTMENT (DKT. 12), AND
DENYING AS MOOT DEFENDANT'S MOTION TO SHOW CAUSE (DKT. 16)**

Defendant Phillip Eugene Walker has moved to dismiss the indictment against him on the ground that the delay of over five years between his May 2008 indictment and July 2013 arrest constitutes a violation of his right to a speedy trial under the Sixth Amendment of the United States Constitution (Dkt. 12). The Government filed a response to the motion (Dkt. 15) and the Court conducted an evidentiary hearing and heard oral argument on October 3, 2013.

For the reasons set forth below, Defendant's motion to dismiss the indictment is DENIED.[1]

## I. FACTUAL BACKGROUND

On January 22, 2008, a state search warrant was executed at 1251 East

---

[1] Defendant also filed, *pro se*, a "motion to show cause" (Dkt. 16), asking for a hearing on his motion to dismiss the indictment. Since the Court held a hearing on October 3, 2013, this motion is DENIED AS MOOT.

Hamilton Avenue, Flint, Michigan, the then-home of Defendant. Among other things, four firearms were seized from the residence, to wit: one Rosco Arms .22 caliber handgun, one Harrington and Richardson .22 caliber handgun, one Ithaca 12 gauge shotgun and one FIE (Dynastar) .22 caliber handgun. At the time the search warrant was executed, Defendant was the only individual found in the residence. After waiving his Miranda rights, Defendant gave the officers a hand-written statement, in which he admitted that he had possession of the shotgun for "protection," but that an individual named "Ford" owned the shotgun; he further stated that the three handguns, although not owned by him, were located in safe that he owned (Ex. 7; Advice of Rights Form and Defendant's Statement).[2] Defendant was arrested by State authorities at the time of the search and released later the same day.

The matter was then referred to the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) for prosecution. On May 14, 2008, a federal grand jury sitting in Flint returned a one count indictment against Defendant for being a convicted felon in possession of a firearm, in violation of 18 U.S.C. § 922(g) (Dkt. 3; Indictment). The indictment remained sealed until Defendant's arrest on July 16, 2013 (Dkt. 1, Order to Seal; Dkt. 2, Order to Unseal).

During the hearing on Defendant's motion to dismiss, the Government presented the testimony of ATF Agent Tracy O'Neal. Agent O'Neal testified that,

---

[2] During the hearing, the Government proffered nine documents as exhibits – 1A, 1B, 2A, 2B and 3 - 7. Defendant did not object to the proffered exhibits (October 3, 2013 Hearing Transcript ("Tr.") at 2-3).

shortly after Defendant's indictment, an arrest warrant was issued, and was entered into Michigan's Law Enforcement Information Network ("LEIN") (Tr. 5). In January 2009, officers noted that Defendant's last-known address – the house on East Hamilton – appeared to be abandoned (Ex. 6; ATF Management Log). Contact was made with Defendant's daughter who advised officers that she was trying to get Defendant to turn himself in to authorities. *Id.* Defendant's daughter further reported that, in January 2009, Defendant had been in town for the holidays but had since left the area. *Id.* In April 2009, officers again went to the East Hamilton address and spoke with Defendant's daughter, who provided an address on the east side of Flint where she believed Defendant was residing. She advised that Defendant was living with his brother. Officers were unsuccessful in locating Defendant at this new address. During this same time however, neighbors reported that Defendant was still living with his daughter on East Hamilton.

Throughout the summer months of 2009, agents continued to search for Defendant, and regularly ran updated reports in LEIN and Accurint (an information database, managed by LexisNexis) seeking any new information as to Defendant's whereabouts (Ex. 6). The U.S. Marshal's Service was provided information to include Defendant on fugitive sweeps in the Flint area. *Id.*

In March 2011, ATF received a tip from Defendant's brother that Defendant was staying at a home in Flint, Michigan on Indiana Street. *Id.* Defendant was not located during several surveillance attempts at this location. *Id.* Agents spoke to a near-by, local business owner who advised that he had seen Defendant in the area.

He also gave officers the name of a neighbor who might have further information. Contact was made with the neighbor and her husband, who indicated that they had not seen Defendant in the area.

In October 2011, ATF agents received information from the Genesee County Sheriff's Department that Defendant had been arrested for disorderly conduct on May 24, 2011 (Ex. 1B; Genesee County Incident Report; Ex. 6). At the time of this arrest, Defendant told officers that he went by the name "Phil," but was "not cooperative in [giving] any further personal information." *Id.* At the time of his arrest, Defendant had in his possession a Michigan driver's license in the name of Duane Leroy Sisco, and he was booked under that name (Ex. 1A; Genesee County Booking Photo). Defendant admits, in his motion to dismiss, that he "used another name for a period of time (because of the loss of his own identification)" (Dkt. 12 at 2-3). Defendant was released by the Genesee County Sheriff's Department without the Sheriff's Department realizing that Defendant was an ATF fugitive (Tr. 18-19). Agent O'Neal testified that, at the time of Defendant's May 2011 arrest, his fingerprints had been submitted by the Sheriff's Department and found to match his true identity, Philip Eugene Walker (Tr. 43-44).

Agent O'Neal then entered the name "Duane Leroy Cisco" into the LEIN record associated with Defendant's ATF arrest warrant, as an alias of Defendant (Tr. 17; Ex. 6). ATF conducted additional background searches using Defendant's alias, and found that Michigan's Secretary of State had records for two individuals using the name "Duane Leroy Cicso" (Exs. 3 & 4). The photograph of one of the

individuals appeared to be Defendant (Ex. 3; Tr. 20). Two new addresses were ascertained for Defendant; agents surveilled these areas, but did not locate Defendant (Ex. 6).

Throughout 2012, ATF continued to check known addresses and run updated LEIN checks. *Id.* The U.S. Marshal's Service was again contacted in January 2013 and they added Defendant to the "most wanted" list. *Id.* The U.S. Marshal's Service then forwarded Defendant's information to be aired on "crime stoppers" (Tr. 22).

As a result of the crime stoppers publicity, officers of the Flint Police Department received a tip that Defendant was staying at the Flint Eastside Mission; he was arrested on July 16, 2013, at that homeless shelter (Tr. 22). Defendant was registered at the shelter only as "Phillip," and had been homeless and living in the woods in "a big container" and "under a bridge," for the past two to three years (Tr. 25).

## II. ANALYSIS

### A. Legal Framework For Analyzing A Speedy Trial Act Violation

The Sixth Amendment guarantees that, in all criminal prosecutions, the accused shall enjoy the right to a speedy trial. *See* U.S. Const. amend VI. The Supreme Court's decision in *Barker v. Wingo,* 407 U.S. 514 (1972), provides the legal framework governing a motion to dismiss an indictment under the Sixth Amendment due to post-indictment delay. *Barker* specifies a four-factor balancing test, which requires the Court to weigh the following considerations: (1) the length

of delay; (2) the reason for the delay; (3) the defendant's timely assertion of his right to a speedy trial; and (4) prejudice to the defendant as a result of the delay. *Id.* at 530. None of these factors, alone, is sufficient to establish a violation of the Sixth Amendment, "'rather, they are related factors and must be considered together with such other circumstances as may be relevant.'" *United States v. Brown*, 169 F.3d 344, 348 (6th Cir. 1999) (quoting *Barker*, 407 U.S. at 533). "In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process," *Barker,* 407 U.S. at 533, with the result that "reasonable minds may disagree in close cases on whether the balance of factors tips in favor of recognizing a violation" of the speedy trial right. *United States v. Valiente-Mejia*, No. 04-772, 2009 U.S. Dist. LEXIS 99201, at *13 (S.D.N.Y. Oct. 19, 2009). Here, on balance, the *Barker* factors do not weigh in favor of Defendant. Although the delay of over five years is significant in this case, much of it was caused by Defendant's own conduct and he has not shown substantial prejudice from the delay.

### B. Analysis Of The *Barker* Factors

#### 1. Length of the Delay

The length of the delay involves a two-part inquiry. First, "to trigger a speedy trial analysis, an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay. . . ." *Doggett v. United States of America*, 505 U.S. 647, 651-52 (1992). "A delay approaching one year is presumptively prejudicial." *United States*

*v. Robinson*, 455 F.3d 602, 607 (6th Cir. 2006) (citing *Doggett*, 505 U.S. at 652, n.1). It is undisputed that the delay here of over five years is presumptively prejudicial. A delay that is presumptively prejudicial triggers consideration of the remaining *Barker* factors.

### 2. Reason for the Delay

This factor requires the Court to consider "whether the government or the criminal defendant is more to blame for that delay." *Doggett*, 505 U.S. at 651. In making this determination, the Court considers the activities of the Government and Defendant between the date the indictment was returned (May 14, 2008) and the date of Defendant's arrest (July 16, 2013). The Government has a constitutional duty to make a diligent, good faith effort to bring a defendant to trial promptly, and therefore, the burden is on the prosecution to explain the cause of pre-trial delay. *Brown*, 169 F.3d at 349. If the Government deliberately delays in order to acquire a tactical advantage, this factor weighs heavily in favor of the defendant. *See Barker*, 407 U.S. at 531. Negligence on the part of the government "should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." *Id*.

By contrast, "[a] defendant's claim that the government violated [his] right to a speedy trial is seriously undermined when the defendant, and not the government, is the cause of the delay." *United States v. Blanco*, 861 F.2d 773, 778 (2d Cir. 1988); *see also Brown,* 169 F.3d at 349- 50 (likewise explaining that a

defendant who intentionally evades prosecution is responsible for the delay and cannot claim prejudice resulting from such delay; however, the government must exercise reasonable diligence in attempting to locate and notify a defendant of the indictment against him).

Considering the evidence presented, the Court finds that the Government exercised reasonable diligence in trying to secure Defendant's arrest. The Government proffered evidence that agents continuously searched for Defendant after the indictment was returned. There is no evidence suggesting that the Government failed to continue looking for Defendant. Furthermore, the Government has proffered evidence that Defendant used an alias and false-identification during the time he was being sought by the authorities. Clearly, this conduct suggests the Defendant bears considerable responsibility for the fact that his apprehension was delayed. Other courts have found that the government's utilization of law enforcement databases constitutes reasonable diligence. For example, in *United States Valiente-Mejia*, No. 04-772, 2009 U.S. Dist. LEXIS 99201 (S.D.N.Y. 2009), the court aptly stated:

> Despite defendant's claims to the contrary, it is clear that the Government did not merely sit idly by after [defendant's] indictment. As summarized in detail above, the Government took a number of steps to apprehend [defendant]. First, in the weeks following defendant's indictment, the Government entered defendant's information into a number of standard law enforcement databases. Courts have routinely held that such efforts support the government's claim that it exercised due diligence in apprehending defendants.

*Id.* at *27-28 [citing cases].

Here, agents immediately entered Defendant's information into Michigan's LEIN system, in an attempt to locate Defendant. In addition to Defendant's (admitted) use of an alias and false identification, Defendant's transient and itinerant lifestyle, and his avoidance of his prior residence added substantially to the difficulties law enforcement had in locating him. In sum, the Court finds that Defendant was more at fault in causing the delay in arresting him than the Government was. As such, this factor does not weigh in Defendant's favor.

### 3. Timely Assertion of Speedy Trial Violation

Under the third factor, a court considers whether and how the defendant asserted his speedy trial right following the indictment. There is no dispute that Defendant asserted his Sixth Amendment right to a speedy trial during his initial appearance before Magistrate Judge Hluchaniuk and filed the current motion to dismiss within one month after his arrest. But that is not the sole inquiry. This factor also considers a defendant's *awareness* of the underlying indictment or charges. In other words, this factor considers whether Defendant was aware of the potential charges against him, but did not assert his right to a speedy trial. *See Doggett*, 505 U.S. at 653 (holding that where a defendant knows of the potential charges against him a lengthy time before he is apprehended, this factor will "be weighed heavily against him").

Much of the previous discussion regarding the reason for the delay (*i.e.*, Defendant using a false name, false identification, and living a transient and itinerant lifestyle) applies with equal force to determining whether Defendant knew

of the potential charges against him. The totality of these circumstances suggest that Defendant was probably aware that charges were either pending against him, or that he was being sought by the authorities. He clearly knew that he had been arrested with firearms and that his status as a convicted felon prohibited him from possessing firearms. It is not unreasonable to infer that Defendant should have expected some charges to flow from this arrest, even if he did not have actual knowledge that he was under federal indictment.

However, Defendant never demanded a speedy trial during the five years between his initial arrest and his apprehension. Defendant could have ensured a much speedier trial if he had either turned himself in, used his real name when he was arrested in 2011, or told his family members where he could be located. While Defendant clearly asserted him speedy trial rights once he was arrested, his conduct in causing the delay of his apprehension weighs against any finding on this factor in Defendant's favor. *See United States of America v. Tchibassa*, 452 F.3d 918, 926 (D.C. Cir. 2006) (defendant "may not have known that a formal indictment had issued . . . but if he was aware that charges were pending against him [as the district court reasonably found he was], his failure to make any effort to secure a timely trial on them [and his apparent desire to avoid one] manifests a total disregard for his speedy trial right").

### 4. Prejudice

"When the delay is lengthy and attributable to bad faith by the government,

no showing of prejudice is required. However, when the government has used reasonable diligence to pursue a defendant, the defendant must show that the delay caused 'actual prejudice' to his defense." *Brown,* 169 F.3d at 350. Between the two extremes of bad faith and reasonable diligence is the middle ground of official negligence. *See Doggett*, 505 U.S. at 656-57. If the delay was caused by the Government's negligence, then the defendant's obligation to prove prejudice diminishes as the delay increases. *Id.* at 657. Moreover, "[a]ctual prejudice is determined by examining whether the defendant has suffered (1) oppressive pretrial incarceration; (2) anxiety and concern; and (3) impairment to his defense." *Id.* "Of these forms of prejudice, 'the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system.'" *Doggett,* 505 U.S. at 654 (quoting *Barker,* 407 U.S. at 532).

    Defendant was not incarcerated during the delay at issue nor does he claim anxiety and concern. Defendant's primary contention is that prejudice should be presumed because "[h]e is now without means to locate witnesses who could establish that the guns involved in this case were not in Defendant's possession" (Dkt. 12 at 5). However, these are all allegations of "potential prejudice rather than actual prejudice" and do not establish actual prejudice "beyond the ordinary difficulties posed by the passage of time." *Heshelman*, 2009 U.S. Dist. LEXIS 42948, at * 13, 18 (citing *Barker*, 407 U.S. at 534); *see also Chaudhry*, 2010 U.S. Dist. LEXIS 111565, at *23-24 (no prejudice where defendant failed to identify any witness who could be of assistance to him who died or was otherwise unavailable

-11-

due to the passage of time); *Corona-Verbera*, 509 F.3d at 1113,1116 (finding no actual prejudice for similar reasons); *Tchibassa*, 452 F.3d at (prejudice factor did not weigh in defendant's favor where he alleged only generally that the passage of time compromised his ability to locate witnesses "without identifying any material witness much less a failed attempt to locate one").

Again, much of the prejudice claimed is of Defendant's own making. Furthermore, the Government has proffered evidence that Defendant was the only individual in the East Hamilton house at the time it was searched and the guns at issue were discovered. According to the evidence presented during the hearing, Defendant waived his *Miranda* rights, and admitted to possessing the Ithica 12 gauge shotgun for "protection," and that the .22 caliber handguns at issue were located in a safe owned by him (Ex. 7).

The Court recognizes that the passage of time generally makes it more difficult to locate witnesses and allows memories to fade. In this case, Defendant told the agents that the shotgun seized was actually owned by "Ford," and the guns in his safe were also owned by others, so Defendant claims prejudice because it may be difficult, at this late date, to locate witnesses who could testify on his behalf. However, Defendant has not shown either: (a) that any particular witness is now unavailable; or (b) that any witness could provide testimony that would negate Defendant's actual or constructive possession of the firearms at the time of his arrest. Considering this, and the fact that Defendant's own conduct was the primary reason for the delay, the Court finds insufficient evidence to conclude that

the delay caused any actual prejudice. Accordingly, this factor does not weigh in Defendant's favor.

### III. CONCLUSION

For the reasons set forth above, Defendant's motion to dismiss the indictment (Dkt. 12) is **DENIED**.

**IT IS SO ORDERED**.

s/Terrence G. Berg
TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE

Dated: October 25, 2013

### Certificate of Service

I hereby certify that this Order was electronically submitted on October 25, 2013, using the CM/ECF system, which will send notification to each party.

s/A. Chubb
Case Manager